UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARDO SEGURA,<br><br>    Plaintiff,<br><br>  v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>    Defendants. | Case No.  25-cv-03130-PCP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Gerardo Segura sued the County of Santa Clara and various employees of the County's Valley Medical Center for firing him in retaliation for reporting alleged safety violations at the hospital. Segura argues that his firing violated the First Amendment, California Government Code Section 12940, and California Labor Code Section 1102.5, and seeks compensatory and punitive damages. Defendants move to dismiss Segura's suit for failure to state a claim.[1] For the following reasons, the Court denies in part and grants in part defendants' motion to dismiss the First Amendment claim, denies the County's motion to dismiss the Labor Code claim, and grants the County's motion to dismiss the Government Code claim.[2]

## BACKGROUND

Plaintiff Gerardo Segura was Chief Educator in the Sterile Processing Department at the County of Santa Clara's Valley Medical Center.[3] Segura alleges that he told his superiors that the

---

[1] Defendant Clark moved separately from the others and only as to the First Amendment claim, which is the only claim asserted against her.

[2] The County defendants (all defendants except Clark) move for judicial notice of a set of documents. Dkt. 28. This court "may take judicial notice of court filings and other matters of public record." *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The documents of which the County defendants seek judicial notice are state court documents and a job description, and Segura does not oppose the County's request. The defendants' request is therefore granted.

[3] The Court assumes the truth of the allegations in the first amended complaint for the purposes of

hospital was failing to follow sterile processing standards. Beginning in February 2022, Segura reported health violations to his higher-ups at the medical center. On June 30, 2022, Segura filed a sexual harassment complaint against one of his superiors, not a party to this litigation, which the County's Equal Opportunity Division sustained months later. In September 2022, concerned about "what [Segura] reasonably believed were violations of law including the withholding of information about the cleaning of medical equipment, safety issues, [and] improper use of wire brushes on medical instruments," Segura continued to report his concern to both his superiors and the California Department of Public Health. Segura alleges that defendants received his reports but "communicated … that he should limit himself to educating, and stay in his lane or words to that effect."

In October 2022, after Segura told superiors that he was reporting his concerns about safety practices to others, the County wrote Segura a letter of reprimand and put him on a performance improvement plan, which Segura says was "baseless … and constituted additional acts of retaliation." In January 2023, despite allegedly telling Segura that he had resolved the issues that led to the letter of reprimand and performance improvement plan, Segura was placed on involuntary leave. Shortly thereafter, in February and March 2023, Segura complained to the County of retaliation. In September 2023 and January 2024, Segura also filed state court lawsuits alleging retaliation by the County, which were eventually consolidated. The County investigated Segura from January 2023 until August 2024, when it recommended Segura's termination, which occurred on September 25, 2024.

After his termination, Segura filed another complaint with the County in January 2025, which the county rejected on March 7, 2025. On April 7, 2025, Segura filed the instant suit against the County of Santa Clara and Valley Medical Center leaders including CEO Paul Lorenz, Chief Nursing Officer Jill Sproul, Director of Nursing and Chief Nursing Officer Andrea Brollini, Surgical Department Manager Gina Bommarito, Interim Director of Nursing Garinderjit Gill, and Interim Manager of Sterile Processing Department Penese Clark. The defendants except for Clark

defendants' Rule 12(b)(6) motion.

2

thereafter moved to dismiss his complaint in its entirety for failure to state a claim, and Clark moved to dismiss only his First Amendment claim. Dkts. 27, 29.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint does not do so, the defendant may move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## ANALYSIS

The County defendants move to dismiss all of Segura's claims, while Clark moves to dismiss only Segura's First Amendment claim.

### I. First Amendment Retaliation

#### A. Timeliness

Defendants contend that Segura's First Amendment claim is time-barred. Because Segura brings his First Amendment retaliation claim under 42 U.S.C. § 1983, this Court applies

California's two-year statute of limitations for personal injury actions. *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Segura filed his initial complaint on April 7, 2025, so only claims arising from events that occurred on or after April 7, 2023, are timely.

Many of the events Segura relies upon to support his First Amendment retaliation claim occurred before that date. Segura alleges, for example, that he reported "patient safety-related violations relating to 'point of use' cleaning to" his managers and filed a complaint of sexual harassment against a different supervisor in 2022. These events occurred outside the statute of limitations and therefore cannot provide any basis for liability unless Segura can provide a legal basis for extending the statute. But Segura also alleges actionable events falling within the two-year limitations period, such as the County's investigation into Segura through October 2023, its August 9, 2024, recommendation that Segura be terminated, and Segura's termination on September 25, 2024. In particular, Segura alleges that Brollini, Bommarito, and Gill "engaged in additional retaliation by making false accusations and accused Mr. Segura of misconduct during purported investigatory meetings conducted throughout 2023." He also alleges that Brollini and Gill "recommended that Mr. Segura be terminated from his employment." Segura has thus alleged that unlawful actions were taken by the County, Brollini, Bommarito, and Gill within the limitations period.

Segura's claim is untimely, however, as to Lorenz, Sproul, and Clark. Segura's only allegations regarding Lorenz are that Segura emailed superiors, including Lorenz, around May 20, 2022.[4] Segura's only allegations regarding Sproul are that, in July and August 2022, he told her about retaliation and that, in January 2023, she was present at the meeting where Segura was placed on involuntary leave. And Segura alleges that around October 2022, Clark covered up safety concerns and reprimanded Segura for reporting safety concerns to the California Department of Public Health. All of these events occurred before the limitations period and therefore cannot give rise to liability.[5]

---

[4] Although Segura's complaint suggests at one point that this email was sent on May 20, 2024, it is clear in context that this was a typographical error.
[5] While Segura also makes broad allegations against the "County and its managers," this type of group pleading is insufficient to state a § 1983 claim. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th

4

Segura argues that the "continuing violation" doctrine allows him to rely upon conduct by Clark that occurred before April 7, 2023. Specifically, Segura argues that he satisfies the "serial acts" branch of that doctrine, which groups together "sufficiently related" acts such that a plaintiff can recover for all related acts if at least one act is timely. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 746–47 (9th Cir. 2019). In his view, Clark's actions "were part of a broader, coordinated campaign of retaliation culminating in termination on September 25, 2024."

The Supreme Court and the Ninth Circuit, however, have generally limited the "serial acts" theory to hostile work environment allegations. As the *Morgan* Court explained, "A discrete retaliatory or discriminatory act 'occur[s]' on the day that it 'happened'" and is easier to identify than a hostile workplace claim. 536 U.S. at 110–15. The continuing violation doctrine is limited to claims whose "very nature involves repeated conflicts" that "cannot be said to occur on any particular day." *See Morgan*, 536 U.S. at 115; *Bird*, 935 F.3d at 748.

Here, Segura challenges discrete acts of retaliation—including most notably his termination—rather than a series of hostile actions that could only be identified as retaliatory when considered in their totality. Segura therefore cannot rely on a continuing violation theory to premise liability on events occurring before April 7, 2023. While Segura can still "use … time barred acts … as evidence to establish motive and to put his timely-filed claims in context," those acts cannot provide the basis for any defendant's liability. *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003).

Accordingly, Segura's First Amendment retaliation claim is timely as to the 2023 investigation beginning on July 7, 2023, the August 2024 termination notice, and the September 2024 termination. That claim is untimely as to defendants Lorenz, Sproul, and Clark, and Segura's First Amendment claim against those defendants is dismissed with leave to amend only to the extent Segura can in good faith allege that any of those defendants engaged in unlawful conduct within the statute of limitations.

---

Cir. 1989).

**B.     Merits**

The First Amendment protects a public employee's speech if two conditions are met. The first condition is that "the employee spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). The Court has explained that the "controlling factor" in this inquiry is that the plaintiff did not make their statements "pursuant to [their] duties." *Id.* at 421. If the first condition is satisfied, the First Amendment still does not protect a public employee's speech if "the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* at 418. The Ninth Circuit has broken the overall inquiry into five parts: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (discussing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) and quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). The County defendants argue that Segura fails to satisfy the first two conditions: that he was speaking on a matter of public concern and that he was speaking as a private citizen as opposed to as a public employee.

**1.     Matter of Public Concern**

A plaintiff's speech is on a matter of public concern as "determined by the content, form, and context of a given statement" and depends on "whether the employee aimed to bring wrongdoing to light, not merely to further some purely private interest." *Greisen v. Hanken*, 925 F.3d 1097, 1109 (9th Cir. 2019) (cleaned up). Someone speaking on a matter of public concern might "seek to bring to light actual or potential wrongdoing or breach of public trust," *Connick v. Myers*, 461 U.S. 138, 148 (1983), or expose official misconduct, *see Dahlia*, 735 F.3d at 1067–68. A plaintiff does not need to "air his concerns publicly" for his speech to involve a matter of public concern. *Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 749 (9th Cir. 2010).

Here, Segura spoke about safety practices at Valley Medical Center and allegedly sought to

6

alert his superiors and public health authorities to his concerns. Segura was not acting "merely to further some purely private interest" because, according to Segura, his speech "involve[d] violations of law concerning regulating hospital standards relating to patient safety," which are relevant for public accountability and the "health and safety of patients … and the general public." *Greisen*, 925 F.3d at 1109. Segura's actions included reporting "his concerns about cleaning process issues," to the California Department of Public Health, which oversees California's public hospital system. Segura's speech regarding his safety concerns therefore involved a matter of public concern.

### 2. Speaking as a Private Citizen

The Ninth Circuit has identified three principles to use in determining whether a plaintiff spoke as a public employee or as a private citizen. First, courts consider whether the employee spoke within their "chain of command" only or reported their speech outside that chain to others. *Dahlia*, 735 F.3d at 1074. Second, courts consider whether the subject matter of their speech is "typically within [their] job duties" or instead involves "rais[ing] … broad concerns about corruption or systemic abuse." *Id.* at 1074–75. Third, courts consider whether the public employee spoke "in direct contravention to his supervisor's orders." *Id.* at 1075. All three factors favor concluding that Segura was speaking as a private citizen.

First, while Segura did speak within his "chain of command" by alerting supervisors to his concerns, Segura allegedly also reported his concerns to those *outside* his chain of command on at least two occasions. Segura reported the "unsafe and improper use of wire brush to clean surgical instruments for use in the Pulmonary-Respiratory Department" to a respiratory therapist in that department who was not in Segura's chain of command (or department). Second, Segura reported his concerns to the California Department of Public Health. As in *Dahlia*, where a Burbank Police Department officer disclosed concerns about fellow officers to the Los Angeles Sheriff's Department, the respiratory therapist was not in Segura's department and the California Department of Public Health was "an outside agency altogether." *Dahlia*, 735 F.3d at 1077–78. The first factor thus favors Segura.

Second, the subject matter of Segura's speech involved broader "corruption or systemic

7

abuse." *Id.* at 1074–75. Segura alleges that his reports involved not isolated incidents related to his job duties but a broader culture of covering up safety shortcomings. Segura alleges that starting in February 2022, he reported to superiors that "the County was not implementing and enforcing Point of Use Treatment standards resulting in risks [to] the safety of patients or staff or both." Segura also alleges that around May 20, 2022, he emailed superiors "reporting the County's failure to implement and enforce standards for water quality and cleaning of medical containers causing risk to the safety of patients or staff or both." Segura again reported safety concerns around June 6, 2022.

Third, Segura spoke in "direct contravention" of his superior's order. *See Dahlia*, 735 F.3d at 1077. Segura has pleaded, for example, that before informing the respiratory therapist of alleged improper uses of the wire brush, defendant Clark (Segura's supervisor at the time) told him "to not disclose the improper use of the wire brush, and withhold the fact of improper use from [the therapist]."

Defendants argue that Segura was speaking as a public employee rather than as a private citizen because his job involved reporting safety concerns. *See Garcetti*, 547 U.S. at 421 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes…."). Segura alleges that his job duties included "educating sterile processing technicians, but not completing tasks himself, managing technicians, or enforcing standards—which were the responsibilities of supervisors and managers above Mr. Segura." None of these duties involve reporting safety issues. The county defendants nonetheless argue, based on Segura's job description, that the job's requirements also included that he know legal requirements, "'*[o]versee* daily [Sterile Processing] department *quality control*,' including 'error detection' and 'developing improvement programs,' as well as 'daily activity, and improvement planning and implementation' to meet those standards." In the County's view, Segura had an obligation to "'oversee' and ensure that his department was compliant with safety standards," which "relate[d] to" meeting legal requirements, including reporting safety concerns. But even assuming Segura's job description included overseeing safety compliance, that would not establish that Segura was speaking as a public employee with respect to the reporting at issue

8

here because the quoted job duties do not encompass reporting those concerns outside Segura's chain of command or outside of the hospital.

Moreover, the County defendants read *Garcetti* too broadly. They argue for the categorical rule that if speech "owes its existence to a public employee's responsibilities," then the plaintiff is speaking as a public employee, not a private citizen. *See Garcetti*, 547 U.S. at 421–22. But the prosecutor's speech in *Garcetti* "owe[d] its existence to [that] public employee's responsibilities" in the narrow sense that that speech was made "pursuant to [his] official duties." *Id.* at 421. The County's overly broad reading of *Garcetti* would suggest that *any* speech based on information a whistleblower learned on their job would be unprotected by the First Amendment because such information "owes its existence" to that employee's responsibilities. *Id.*; *see also Weintraub v. Bd. of Educ. of City Sch. Dist.*, 593 F.3d 196, 205–06 (2d Cir. 2010) (Calabresi, J., dissenting) (rejecting the expansion of *Garcetti*'s requirement that public employee speech be "pursuant to official duties" to include speech "in furtherance of" "core duties"). Neither the Supreme Court nor the Ninth Circuit has ever adopted such a rule.

The County defendants try to distinguish Segura from the police chief in *Greisen v. Hanken*, 925 F.3d 1097, who was retaliated against for raising concerns about budgeting practices. They note that the police chief's job responsibilities did not include city finances, while Segura's job did involve some responsibility for overseeing safe sterilization practices. But what matters for the First Amendment is whether the speech at issue was made "pursuant to [the employee's] official duties." *Garcetti*, 547 U.S. at 421. Segura's whistleblowing was not undertaken "pursuant to [his] official duties" because those duties did not require him to report outside of his chain of command.

For these reasons, Segura has adequately alleged that he was speaking on a matter of public concern as a private citizen. The remaining defendants' motion to dismiss the First Amendment claim against them is therefore denied.

### C. Punitive Damages

Punitive damages may be awarded for § 1983 violations "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Whether a defendant acted with the requisite motive for punitive damages is ordinarily a question for a jury. *See id.*; *see also Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) ("It is well established that a jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.") (internal quotation marks omitted). Here, Segura alleges that in the leadup to his termination defendants Brollini, Bommarito, and Gil retaliated against him for raising safety concerns and ultimately caused his termination."[A]ccept[ing] all factual allegations in the complaint as true and constru[ing] the pleadings in the light most favorable" to Segura, *Rowe*, 559 F.3d at 1029–30 , Segura has plausibly alleged that the defendants exhibited callous or reckless indifference to his First Amendment rights. Defendants' motion to dismiss Segura's request for punitive damages is therefore denied.

## II. California Labor Code Section 1102.5(b)

California Labor Code Section 1102.5(b) forbids an employer from retaliating against "an employee for disclosing information … if the employee has reasonable cause to believe that the information discloses" a violation of a state or federal law or rule. If a plaintiff shows that their "protected whistleblowing was a 'contributing factor' to an adverse employment action," then the employer must show "that the alleged adverse employment action would have occurred 'for legitimate, independent reasons' even if the employee had not engaged in protected whistleblowing activities." *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 712 (2022).

In moving to dismiss Segura's Section 1102.5(b) claim, the County first argues that the claim is untimely at least in part.[6] In California, the Government Claims Act requires a plaintiff suing a public agency to submit their claim to that agency before bringing their suit. *See Willis v. City of Carlsbad*, 48 Cal. App. 5th 1104, 1118 (2020). Personal injury claims must be submitted within six months of the accrual of the cause of action and other claims within one year. *Id.* Both

---

[6] Segura's state law causes of action are brought against only the County.

10

parties agree that the relevant claim was filed on January 28, 2025. Segura contends that his September 25, 2024, termination is the actionable event and correctly contends that a claim premised on that termination is timely because he was terminated less than six months before January 28, 2025. As with his § 1983 cause of action, however, events falling more than six months before Segura submitted his claim on January 28, 2025, such as Clark allegedly "physically provok[ing]" Segura, are not actionable. Therefore, Segura can properly pursue a Section 1102.5 claim only as to his termination and events within the relevant limitations period.

The County separately argues that Segura fails to state a Section 1102.5 claim because he alleges that he disclosed only "internal, interpersonal disputes" rather than any violation of a law or rule and he has not pleaded an adverse employment action. But Segura pleads that he reported concerns about health violations to an external state agency, the California Department of Public Health, in September 2022. He also pleads that, after the public health agency "determined that the County had, in fact, engaged in multiple violations," Segura's managers retaliated by placing Segura on involuntary leave and ultimately initiating the process that led to his termination. Thus, Segura has plausibly alleged that he disclosed concerns about violations to an outside agency—protected whistleblowing—and that the County and its managers terminated him as a result—the adverse employment action. The County defendants' motion to dismiss the Section 1102.5(b) claim is therefore denied.

## III. California Government Code Section 12940

California Government Code Section 12940(h) prohibits "any employer" from "discharg[ing], expel[ling], or otherwise discriminat[ing] against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." A plaintiff must show "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

Segura alleges that Santa Clara County violated Section 12940(h) by terminating his employment in response to his June 2022 complaint about his sexual harassment by county

employee Angelina Pagliosotti. The problem with Segura's Section 12940(h) claim is that he fails to plausibly allege "a causal link … between the protected activity and the employer's action." Segura alleges that his protected activity was the reporting of Pagliosotti's sexual harassment, while alleging that the adverse employment action was his termination. But Segura's complaint does not plausibly explain how his reporting of Pagliosotti's sexual harassment led to the termination of his employment more than two years thereafter. To the contrary, he pleads several other intervening events with a much stronger temporal connection to the alleged retaliation, such as his whistleblowing to the California Department of Public Health. His complaint thus fails to plead facts supporting the plausible inference that the county terminated his employment in September 2024 because of his having complained about sexual harassment in June 2022. The County's motion to dismiss the Section 12940(h) claim is therefore granted.

## CONCLUSION

For the above reasons, defendants' motions to dismiss Segura's First Amendment claim is denied except as to Lorenz, Sproul, and Clark. The County's motion to dismiss his Government Code claim is granted, and its motion to dismiss Segura's Labor Code claim is denied. The dismissal of the Section 12940 claim and the First Amendment claims against Lorenz, Sproul, and Clark is without prejudice and with leave to amend. Any amended complaint must be filed within 28 days of this Order. If no amended complaint is filed, Segura's Section 12940 claim and the First Amendment claims against Lorenz, Sproul, and Clark will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: January 2, 2026

P. Casey Pitts
United States District Judge